IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CASE NO.: 25-MJ-29 (MAU) |
| TALIB ABDUL-WALI | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO**
**THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

Talib Abdul-Wali respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142. Significant factors supporting his release include (1) his ties to the community as a father, HVAC technician, and volunteer and (2) his dated criminal history. In addition, other similarly situated people who have been charged with the status offense of 922(g)(1) have been granted pretrial release. These factors, along with other factors, indicate that Mr. Abdul-Wali should no longer be detained pending the resolution of this case. Because he is neither a danger to the community nor a flight risk, in accordance with 18 U.S.C. § 3142, he must be released back to the community that seeks his return.

**Background**

On February 27, 2025, a single count complaint was filed against Mr. Abdul-Wali charging him with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The indictment relates to events that allegedly occurred on February 26, 2025. Specifically, Mr. Abdul-Wali was arrested when Metropolitan Police Officer observed him holding two bottles of sparkling wine. One of the bottles was allegedly open in violation of D.C. Code § 25-1001(a)(1).

Mr. Abdul-Wali was arrested and had an initial appearance on March 4th. During the detention hearing the next day, the government argued for his detention on the grounds of

dangerousness. The defense argued that Mr. Abdul-Wali was not a danger to the community and that he has strong ties to the District of Columbia. Specifically, the defense argued that Mr. Abdul-Wali is an father, HVAC technician, and a volunteer in his community. He has two third-party custodians, one being the mother of his twin sons, and the other is his mother. The Pretrial Services Agency has deemed them to be eligible to serve as third-party custodians.

## Argument

It is a well-established principle that criminal defendants should not suffer imprisonment on a charge for which they have yet to be convicted. *See Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."); *see id.* ("The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty"). In 1984, Congress enacted the Bail Reform Act to solidify this principle and to ensure that pretrial detention is utilized in only the rare cases in which community safety and flight are serious concerns. In passing the Act, Congress surely did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Rather, Congress intended to reserve pretrial detention for only "a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189. When implementing the provisions of the Bail Reform Act, courts have recognized that the Act clearly favors **release over pretrial detention**. *See United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985); *see also*

*United States v. Salerno*, 481 U.S. 751, 755 (1987) ("In our society liberty is the norm and detention prior to trial or without trial is a carefully limited exception").

The Bail Reform Act mandates courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond. The only exception is if "the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Even if a court determines that personal recognizance or an unsecured appearance bond will not assure a defendant's appearance in court or protect the safety of the community, the court is not permitted to order the pretrial detention without further inquiry. When personal recognizance or an unsecured appearance bond are not sufficient, the court must consider imposing an alternative condition, or combination of conditions, that will assure the defendant's appearance in court and the safety of the community. *See* 18 U.S.C. § 3142(c).[1] Examples of alternative conditions courts may consider imposing include employment or educational requirements, travel restrictions, stay away orders, a specified curfew, or a condition that the defendant refrain from the use of any controlled substance. *See* 18 U.S.C. § 3142(c)(1)(B).

Mr. Abdul-Wali's release is further supported by the fact that the rebuttable presumption of detention does not apply in this case.[2] Even if the rebuttable presumption did apply in this case,

---

[1] When imposing an alternative condition, or combination of conditions, the court must select the "least restrictive" condition(s). *See* 18 U.S.C. § 3142(c)(1)(B).

[2] The rebuttable presumption in 18 U.S.C. § 3142(e)(2) states:
>(2) In a case described in subsection (f)(1) of this section, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community if such judicial officer finds that—
>
>(A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;

Mr. Abdul-Wali would only have to produce some evidence "to suggest" that he is neither dangerous nor likely to flee if released in order to rebut the presumption. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *see also United States v. Alatishe*, 768 F.2d 364 (D.C. Cir. 1985)(the presumption merely "imposes a burden of production on the defendant to offer contrary credible evidence."); *United States v. Miller*, 625 F.Supp. 513, 519 (D. Kan. 1985) (describing the burden as one merely requiring a defendant "to offer some credible evidence contrary to the statutory presumption"). Significantly, this burden of production "is not a heavy one to meet." *United States v. Dominquez*, 783 F.2d 792, 707 (7th Cir. 1986). Mr. Abdul-Wali's credible evidence is that his family seek his return to the community, and he has two third-party custodians.

When evaluating factors which are relevant in determining whether Mr. Abdul-Wali should be released, it is clear that he is not part of the "small but identifiable" group of people for whom the Bail Reform Act contemplates being detained pending trial. As set forth herein, it is also clear that he is able to successfully rebut any presumption that there are no conditions that may reasonably assure the safety of the community.

      1.    *Mr. Abdul-Wali is Not a Danger to the Community.*

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the*

---

(B) the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and

(C) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

>*community*, . . . a court may disable the arrestee from executing that
>threat. . . . Therefore, to order a defendant preventatively detained,
>a court must identify an articulable threat posed by the defendant to
>an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government cannot meet its burden here and Mr. Abdul-Wali should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure his appearance at trial and protect the public.

"[C]lear and convincing evidence" must support a finding that no conditions or combination of conditions exist to reasonably ensure the safety of the community. 18 U.S.C. § 3142(f). "Even overwhelming evidence of guilt would not, alone, meet" the test of clear and convincing evidence. *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). Furthermore, a theoretical danger will not suffice. *See United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community); *United States v. Debrum*, No. 15-cr-10292, 2015 WL 6134359, at *5, 2015 U.S. Dist. LEXIS 141777, at *13-14 (D. Mass. Oct. 19, 2015) (noting that the magistrate judge "theorized various situations in which the defendant may pose a risk to the public if he were released" but finding none of those dangers were "substantially present" in the case).

The best way to assess whether Mr. Abdul-Wali is a danger to the community is to evaluate his personal history, review his suspected conduct in the instant case, and determine whether his release will pose a danger to any particular individual in the community. When examining these

factors, it is abundantly evident that he is not a danger to the community. His history and characteristics strongly negate any concerns about community safety.³

### a. The regulatory nature of this offense and the encounter with police show that Mr. Abdul-Wali is not a danger to the community.

Mr. Abdul-Wali was arrested on February 26th without incident. The government argued that he was holding two bottles of alcohol, one of which was allegedly open, and such conduct was dangerous to the community. However, there is no indication that Mr. Wali consumed the alcohol. It is clear from the video footage that he was passing the bottles to the individual in the white car where he was stopped. The government also argued that he did not admit to the police that he had a firearm. However, admitting to police officers that one is in possession of a firearm could result in physical harm or death.⁴

Possessing a weapon and having the status as a felon is not a crime of violence. *United States v. Gloster*, 969 F. Supp. 92, 98 (D.D.C. 1997)("[n]either the act of possessing a weapon nor the fact of being a felon is in itself a crime of violence"); *see also Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (J. Thomas, concurring)("Under conventional principles of interpretation and our precedents, the offense of unlawfully possessing a short-barreled shotgun does not constitute a "violent felony" under the residual clause of the Armed Career Criminal Act (ACCA)."). Furthermore, "possession of a gun can be entirely innocent." *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). "[T]hat an item is 'dangerous,' in some general sense, does not necessarily suggest, as the Government seems to assume, that it is not also entirely innocent. Even dangerous items can, in some cases, be so commonplace and generally available that we would

---

³ The type of factors the court should consider when assessing a defendant's history and characteristics include criminal history, whether the defendant is under court supervision, family ties, length of residence in the community, and employment record. *See* 18 U.S.C. § 3142(g)(3).
⁴ See Equal Justice Initiative, *On this day, July 6, 2016, Philando Castile Killed by Police in Minnesota*, available at https://calendar.eji.org/racial-injustice/jul/6.

not consider them to alert individuals to the likelihood of strict regulation." *Staples v. United States*, 511 U.S. 600, 611 (1994).

The nonviolent nature of 922(g)(1) offenses may explain why this Court has released several people facing 922 (g)(1) charges from pretrial detention. The following list of cases shows people charged with 922(g)(1) and other similar offenses in this district who have been released pretrial, despite the amount of ammunition:[5]

| Case No. | Pretrial Release Date | Additional Information |
|---|---|---|
| 17-CR-231 Michael Medley | 12/6/17 And 12/11/17 | • Upon execution of search warrant of defendant's residence, four rifles and one semi-automatic pistol was found in the defendant's bedroom and "hundreds of rounds of ammunition various calibers" were found (ECF No. 3, p. 3);<br>• District Court upheld Magistrate judge's decision to release, after government appealed |
| 17-CR-236 Marcus Mahone | 1/8/18 | • Defendant stopped in a vehicle; Gun allegedly recovered from left pocket of construction vest (ECF No. 3);<br>• 30 rounds of ammunition found in defendant's vehicle |
| 18-CR-344 Jerome Simmons | 12/4/18 | • Allegedly during struggle with police officer, gun dropped from defendant's person (ECF No. 5);<br>• 12 rounds of ammunition and one in the chamber;<br>• Defendant admitted to a job training program (see ECF Nos. 7 and 9) |
| 19-CR-192 Tyrone Coleman | 06/06/19 | • Gun allegedly found in unoccupied vehicle (ECF No. 5);<br>• Magazine located next the firearm contained 13 rounds and had a maximum capacity of 26 rounds; a bag in the glove box contained 75 loose rounds |
| 19-CR-243 Martina Brown | 7/17/19 | • Gun with 6 rounds recovered between the mattress and box spring (ECF No. 5);<br>• Cocaine and heroin found, along with $2,513 and digital scales recovered from the apartment |
| 22-CR-268 Joseph Thomas | 08/10/2022 And 08/30/2022 | • Gun with 19 rounds and one in the chamber recovered from underneath driver's seat where defendant was seated (ECF No. 6); |

---

[5] This list is not exhaustive.

| | | |
|---|---|---|
| | | • Approximately 200 rounds of ammunition for various firearms found in the trunk of the vehicle and drugs were found in the car<br>• Drugs were found on defendant;<br>• District Court upheld Magistrate judge's decision to release, after government appealed |
| 22-CR-342<br>Willie Walker | 12/07/2022 | • Gun with 9 rounds of ammunition and was fitted with what appeared to be "giggle switch" which made it qualify as a "machine gun" (ECF No. 8, p. 9)<br>• Defendant also found with money and drugs |
| 23-CR-154<br>Eric Jones | 05/16/2023 | • Gun with 10 rounds and a magazine with a capacity of 13 rounds found on defendant, who fled from the police (ECF No. 20, p-3-4) |
| 23-CR-109<br>Quante Wiggins | 05/26/2023 | • Gun fitted with a "giggle switch" with 13 rounds and one in the chamber recovered on defendant's flight path (per ECF 7);<br>• Defendant fled from the police and found with $1,930, a digital scale, and white rock-like substance |
| 23-CR-299<br>Michael Plummer | 09/01/2023<br>And<br>09/11/2023 | • Gun with 5 rounds with one in the chamber and was "equipped with a laser sight." (ECF No. 10 p. 3)<br>• District Court upheld Magistrate judge's decision to release, after government appealed |
| 24-CR-056<br>Ezra Griffith | 02/09/2024 | • Gun with 30 round magazine found on playground (ECF No. 8 at 3)<br>• Defendant attempted to |

Borrowing from the sentencing world, similarly situated defendants should receive the same treatment from the court. *See* 18 U.S.C. § 3553(a)(6); *see also United States v. Montoya-Vasquez*, No. 4:08CR3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009) (noting that "[b]ut for the ICE threat of removing him, he would absolutely be eligible for release, and similarly situated defendants without alien status and ICE detainers have routinely been released by this court"). Mr. Abdul-Wali should be granted release as other similarly situated defendants.

There may be instances in which a defendant's history and alleged conduct in the charged offense support pretrial release, but the need to protect a particular individual, or individuals, from harm by the defendant warrant pretrial detention. This concern is certainly not present in Mr.

Abdul-Wali's case. Mr. Abdul-Wali has not threatened anyone, he has no intention to threaten or harm anyone, and no reasonable claim can be made that there is any individual in the community who Mr. Abdul-Wali may harm if released. Moreover, there is no allegation that he pointed the firearm at anyone.

> **b. Mr. Abdul-Wali's dated criminal history, employment, his educational pursuits, and letter of support show that he is not a danger to the community.**

Mr. Abdul-Wali is part of the District of Columbia community and seeks to return to being a hard-working father, employee, and volunteer. He has strong family support and significant family ties to the D.C. community. He has resided in the Washington, D.C., metropolitan area for most of his life. He has been employed as an HVAC Technician for WMATA since 2023. He has received several Certificates of Completion from WMATA for keeping time, safety management, and completing ethics training.[6] He completed his High School Diploma in 2006 in North Carolina and in the following year, enrolled Roanoke Chowan Community College.[7] He obtained his HVAC Certificate.[8] He is a tax-paying contributing member of society. In addition, he is able to obtain employment in spite of his prior criminal history. In 2017, he obtained a certificate from CSOSA "in recognition of [his] achievements."[9] In addition, he has successfully completed probation. He has demonstrated that he can comply with court ordered conditions.

His last criminal conviction was more than 25 years ago in 1999, when he was 19 years old. Currently pending in D.C. Superior Court is a Motion to Set Aside his 1999 conviction under the Youth Rehabilitation Act. *United States v. Wali*, Case No. 1999 FEL 000361. As alleged in

---

[6] See Exhibit 1, WMATA Certificates of Completion.
[7] See Exhibit 2, High School Diploma and College Transcript.
[8] See Exhibit 3, HVAC Certificate.
[9] See Exhibit 4, CSOSA Certificate.

9

the pleadings, during his time in prison for the offense, he "'did not incur any Bureau of Prisons (BOP) disciplinary infractions.'" July 15, 2024, Def. Reply to Gov't Opp'n to Motion to Set Aside.

Mr. Abdul-Wali enrolled in The District Dads Program at Martha's Table in Southeast DC. The program coordinator explains that he should be "saluted for his engagement and for his recruitment efforts to other fathers and male caregivers throughout the communities where we live to enroll in our program."[10] He is part of the Alumni Delegation which is "responsible for community outreach, recruitment, mentorship to teen fathers, and assisting with the overall co-design for the future of the program."[11]

In *United States v. Louallen*, No. 19-CR-66, 2019 WL 1003531 (D.D.C. Feb. 27, 2019), this Court upheld pretrial release for a defendant charged with the status offense of being a felon-in-possession. This Court found that "the government ha[d] not met its burden to show by clear and convincing evidence that no condition or combination of conditions of release can reasonably assure the safety of the community." *Id.* at *2. In reviewing the 3142 (g) factors, this Court determined that the "defendant's history and characteristics and the nature and seriousness of the danger to other people or the community that would be posed by defendant's release…*tip[ed] the scales against detention*." *Id.* (emphasis added). Specifically, the defendant in that case had a limited criminal record, maintained employment, and there was no evidence presented of violent behavior. *Id.* In this case, Mr. Abdul-Wali's dated criminal history, commitment to his community, and educational achievements weigh heavily in favor of release.

2. *Appropriate Release Conditions for Mr. Abdul-Wali*

For the reasons discussed in this motion, pursuant to 18 U.S.C. § 3142(b), Talib Abdul-Wali requests that this Court release him on personal recognizance because release on personal

---

[10] See Exhibit 5, Letter of Support from Matt Miller, District Dads Program Coordinator.
[11] *Id.*

recognizance is sufficient for assuring the safety of the community and Mr. Abdul-Wali's appearance in court. In order to comply with the Bail Reform Act's directive, only the "least restrictive" conditions should be imposed. However, if this Court believes that more restrictive release conditions are suitable, he may be released under Pretrial Services' High Intensity Supervision Program (HISP)[12] along with the following conditions:

- Custody of third-party custodians;
    - Ms. Delonda Williams has agreed to serve as a third-party custodian for Mr. Abdul-Wali if he were released. She is the mother of his two youngest children. She "agrees to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142(c)(1)(B)(i). She agrees to supervise him from 12:00 am to 4:00 pm, when she has to leave for work, and then from 10:00 pm when she returns from work.
    - In addition, Ms. Angela Thompson has agreed to serve as a third-party custodian. She is his mother. She has agreed to supervise her son at Ms. Williams's residence from 4:00 pm to 10 pm, when Ms. Williams returns from work.

- Maintain or actively seek employment, *id*. § 3142(c)(1)(B)(ii);

- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);

- Comply with a curfew, *id*. § 3142(c)(1)(B)(vii);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Mr. Abdul-Wali assures this Court that he will comply with all conditions of release, including the condition of refraining from criminal activity, if he is released from custody.

---

[12] HISP requires defendants to report to Pretrial Services frequently, including one in person visit each week, and the program requires defendants to adhere to a curfew which is electronically monitored.

11

Releasing him with "the imposition of stringent release conditions" and "the prospect of revocation of release" is in keeping with Congress's intent under the Bail Reform Act. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189.

    WHEREFORE, for these reasons and any such reasons that shall appear to the Court, Talib Abdul-Wali, respectfully requests that his motion be granted.

                                        Respectfully Submitted,

                                        A. J. KRAMER
                                        FEDERAL PUBLIC DEFENDER

                                        _____/s/_____
                                        UBONG E. AKPAN
                                        Assistant Federal Public Defender
                                        625 Indiana Avenue, N.W., Suite 550
                                        Washington, D.C. 20004
                                        (202) 208-7500

## CERTIFICATE OF SERVICE

I, Ubong E. Akpan, certify that on this 8th day of March 2025, I caused a copy of the foregoing Opposition to be filed through the Electronic Case Filing ("ECF") system and served a copy of on counsel for the government through the ECF.


_____/s/_____
UBONG E. AKPAN
Assistant Federal Public Defender